CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, Plaintiff-Appellee, *v.* HARRIS TRUST AND SAVINGS BANK *et al.*, Defendants-Appellees.—(CLEMENT J. McDONALD, Intervening Defendant-Appellant.)

First District (5th Division)    No. 62985

Opinion filed August 11, 1978.

Richard W. Gillis, of Belnap, McCarthy, Spencer, Sweeney & Harkaway, of Chicago, for appellant.

Joe A. Sutherland, Elliot M. Schnitzer, and William E. Deitrick, all of Gardner, Carton & Douglas, of Chicago (Raymond K. Merrill, of counsel), for appellee Chicago, Milwaukee, St. Paul and Pacific Railroad Company.

Wilbur C. Delp and C. John Buresh, both of Sidley & Austin, of Chicago, for appellee Harris Trust and Savings Bank.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal arises from an order denying appellant's petition for leave

to intervene as a party defendant in a declaratory judgment action brought by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee Road) against the Harris Trust and Savings Bank (Harris) and The First National Bank of Chicago (First National), as trustees under the Milwaukee Road's General Mortgage and Income Debenture Indenture respectively. The issues are whether this court has jurisdiction to hear the appeal and, if so, whether the trial court erred in denying the petition to intervene.

Milwaukee Road brought the declaratory judgment action to seek an interpretation of its General Mortgage and Income Debenture Indenture, both of which provided that consolidated income available for fixed charges and the additions and deductions required to be made shall be determined in accordance with the Uniform System of Accounts (49 C.F.R. par. 1201 (1977)), prescribed by the Interstate Commerce Commission (I.C.C.). In September of 1974, the I.C.C. released a report and order amending the Uniform System of Accounts to require railroads to use the equity method of accounting, instead of the cost method, for all investments in the common stock of affiliated companies in which the railroad owns 20 percent or more of the outstanding voting stock (the Equity Method of Accounting for Certain Long-Term Investments in Common Stocks, I.C.C. Order No. 35949). The equity accounting order was made effective as of January 1, 1974.

Both Harris and First National made formal demands upon Milwaukee Road to follow the I.C.C. Order and (1) to include in its income for 1974 and subsequent years the undistributed earnings of all companies in which it owns 20 percent or more of the voting stock; and (2) to reflect its proportionate share of the undistributed earnings and losses of such affiliated companies from the date of acquisition to 1974, for the purpose of calculating net income available to pay the contingent interest on the railroad bonds. Milwaukee Road informed Harris and First National that the equity accounting order did not require any changes to be made in the cost method used to determine available net income and that it would not include its proportionate share of undistributed earnings of affiliated companies for any year. Milwaukee Road then instituted the declaratory judgment action requesting the court to interpret the provisions of the General Mortgage and Income Debenture Indenture in relation to the I.C.C.'s equity accounting order.

Appellant Clement J. McDonald (McDonald) is an owner of General Mortgage 4½ percent Convertible Income Bonds Series B (Series B bonds). He filed a petition seeking to intervene in the declaratory judgment action, alleging that he and other Series B bondholders were not adequately represented by the trustee, Harris, and that they would be bound by a judgment or decree entered against the trustee. The petition

also asserted that on March 20, 1974, McDonald had filed a class action in the Federal court against Milwaukee Road and others not involved in this appeal, alleging *inter alia* that the railroad improperly failed to include the earnings of certain subsidiaries in its computation of available net income for the years 1969 through 1974. McDonald was recognized as the representative of Series B bondholders in that action, which was commenced prior to both the I.C.C. order and the declaratory judgment action, and in no way does it involve the effect of the I.C.C. order. The issues in the Federal action concern whether certain subsidiaries are "railroad subsidiaries," as that term is defined in the General Mortage, so that their income should have been included in calculating available net income for the years 1969 through 1974, and whether certain loans made by the subsidiaries to Milwaukee Road should be treated as dividends.

In his petition to intervene here, McDonald asserts that the bondholders and Harris, the general mortgage trustee, have adverse interests because Harris breached its duties by failing to object to the accounting procedures; and that the general mortgage trustee cannot adequately represent the bondholders because it might not prevent determinations of material fact which might be adverse to the Federal action and be binding on the bondholders since they are in privity with the general mortgage trustee.

Milwaukee Road, Harris and First National all opposed the intervention of McDonald on the basis that the bondholders' interests were adequately represented by the trustee and that McDonald was attempting to add new issues in the declaratory judgment action.

The trial court denied the petition to intervene on three grounds: (1) McDonald and the other bondholders were adequately represented by the trustee; (2) the bondholders were adequately protected in the Federal action; and (3) McDonald was attempting to add many new issues to the declaratory judgment action. The order denying leave to intervene was entered on June 5, 1975. On October 7, 1975, the court entered an order finding that there was no just reason to delay appeal from the order denying the petition, and McDonald filed a notice of appeal on October 20, 1975.

Opinion

■■ Considering first the question of our jurisdiction to hear this appeal, we note that where a judgment does not dispose of the entire controversy, the judgment is not appealable unless the trial court makes an express finding required by Supreme Court Rule 304(a) that there is no just reason to delay enforcement or appeal (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a)) and that, if Rule 304(a) applies, the notice of appeal must be filed within 30 days of the order finding that there is no just reason to delay an appeal

(*Defenbaugh v. Streator Canning Co.* (1967), 80 Ill. App. 2d 423, 224 N.E.2d 487).

Harris contends the order of June 5, 1975, denying leave to intervene, was a final, appealable order and, since McDonald did not file a notice of appeal within 30 days thereafter, it maintains that we have no jurisdiction. McDonald argues that the order was not appealable until October 7, 1975, when the trial court made the specific finding that there was no just reason to delay appeal and that our jurisdiction attached when he filed a notice of appeal within 30 days of that finding.

It appears that in actions involving multiple parties and/or multiple claims for relief, the question as to whether a denial of a petition to intervene is in and of itself a final judgment under Rule 301, which does not require a Rule 304(a) finding to be appealable prior to the disposition of the related litigation, is not settled in Illinois.

The only supreme court decision in this State to discuss the issue did so when construing section 50(2) of the Civil Practice Act (Ill. Rev. Stat. 1961, ch. 110, par. 50(2)), which is the forerunner of Rule 304(a). In that case, *Board of Trustees v. Timpone* (1963), 28 Ill. 2d 255, 190 N.E.2d 786, an eminent domain action, it was specifically held that section 50(2)[1] was applicable to denials of petitions to intervene in actions involving multiple parties or claims. *Timpone*, however, has not been considered dispositive by certain of the appellate courts; nonetheless, the reasoning of *Timpone* appears to be consistent with and in furtherance of the purpose of Rule 304(a)[2] and, accordingly, we believe it should be followed in the instant case.

In *Timpone*, the court in reviewing the historical aspects of the problem stated:

"Before the enactment of section 50(2), the appealability of an order was determined, apart from certain statutory exceptions, by its finality. The requirement of finality serves to obviate the waste, delay, and expense of piecemeal appeals. It also prevents the interruption of orderly processing in the trial court, forecloses

---

[1] "If multiple parties or multiple claims for relief are involved in an action, the court may enter a final order, judgment or decree as to one or more but fewer than all of the parties or claims only upon an express finding that there is no just reason for delaying enforcement or appeal. In the absence of that finding, any order, judgment or decree which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not terminate the action, is not enforceable or appealable and is subject to revision at any time before the entry of an order, judgment or decree adjudicating all the claims, rights and liabilities of all the parties." Ill. Rev. Stat. 1961, ch. 110, par. 50(2).

[2] Rule 304(a) states in pertinent part that "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal." (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a)).

appellate review of interlocutory determinations that may ultimately become moot, and it permits a reviewing court to measure the prejudicial effect of an error in the context of the case as a whole.

The requirement of a final judgment to support an appeal was clear enough in most cases, but there were situations in which litigants were left in uncertainty. It was held, for example, that the dismissal of a cross petition in eminent domain was a final decision and thus appealable. [Citation.] But an order denying leave to intervene was generally held to be interlocutory, requiring the applicant for intervention to await the conclusion of the whole proceeding before he might appeal. [Citations.] The distinctions were sometimes finely drawn, and the litigant adversely affected by an order was required to decide at his peril whether the ruling was so far final as to start the running of the time for appeal. [Citations.]" (28 Ill. 2d 255, 257-58, 190 N.E.2d 786, 787-88.)

The court then went on to state:

"Section 50(2) was designed to furnish a predictable guide * * *. The section thus empowers the trial judge to determine whether a partial disposition is final for the purposes of appeal. He is familiar with the case as a whole, and can appraise the relation of the remaining issues to those disposed of by the order. If he is inclined to reconsider or revise his ruling, he may preserve that opportunity by declining to make the statutory finding." 28 Ill. 2d 255, 258, 190 N.E.2d 786, 788.

Thus, it appears that the supreme court construed section 50(2) to allow the trial judge to make necessary rulings to enable him to resolve the complex problems that arise in litigation involving multiple parties or claims without having to contend with the numerous delays resulting from the appeal of its every order. In addition, by not including the requisite language of finality in its order, the trial court could convey to the adversely affected party, as well as to the reviewing court, whether its order was final and appealable.

Furthermore, it has been universally found that section 50(2) and therefore Rule 304(a), applies to orders dismissing third-party complaints. It has been held without exception that if the order dismissing a third-party complaint does not include the requisite language of finality, the appellate court lacks jurisdiction to review it. (See *Bohannon v. Ryerson & Sons, Inc.* (1959), 15 Ill. 2d 470, 155 N.E.2d 585; *Krambeer v. Canning* (1962), 36 Ill. App. 2d 428; *Campbell v. Joslyn Manufacturing & Supply Co.* (1965), 65 Ill. App. 2d 344, 212 N.E.2d 512.) Although these cases do not provide the language of explanation found in *Timpone*, in each decision it is noted as a matter of course that under the statute if the order

of the trial court was not dispositive of all claims as to all parties, it was subject to revision and therefore was not appealable unless the requisite finding of finality has been made. This reasoning serves to further illustrate the recognition by the courts of the purpose behind section 50(2) and Rule 304(a) to provide a predictable guide for determining when an order of the trial court is final and appealable.

The reasoning of *Timpone* was followed by the Fifth District in a case involving the denial of a petition to intervene (*Monticello College v. Scott* (1973), 13 Ill. App. 3d 133, 299 N.E.2d 778.) There, the college sought a decree approving its plan to operate as a charitable foundation. A Mrs. Chapman tried unsuccessfully to intervene, and the order denying her petition did not contain the finality language of Rule 304(a). On appeal, the court noted that Mrs. Chapman claimed no interest in the funds held by the college and that the trial court's order did not adjudicate the rights of persons who could assert an interest in those funds. Thus, the ruling was not dispositive of any interest that she may have had in the funds, so that Rule 304(a) was applicable. (13 Ill. App. 3d 133, 135, 299 N.E.2d 778, 779.) The court then noted that there are a number of Illinois cases holding that an order denying intervention is final, but it pointed out that those cases do not refer to the requirements of either Rule 304(a) or section 50(2) (13 Ill. App. 3d 133, 134, 299 N.E.2d 778, 779) and that the only case that did discuss the relevant issue was *Timpone*. The Fifth District then found the reasoning of *Timpone* to be viable, appropriate and controlling. Accordingly, it held that it lacked jurisdiction to hear the Chapman appeal. Supreme Court Rule 307(a)(7) made Rule 304(a) inapplicable to eminent domain proceedings such as the action in *Timpone*; but, nonetheless, the Fifth District felt the reasoning of *Timpone* as to Rule 304(a) had universal application and was still viable. 13 Ill. App. 3d 133, 135, 299 N.E.2d 778, 779.

Other appellate cases in Illinois have held otherwise. In *Veterans Travel Club v. Illinois Commerce Com.* (1973), 15 Ill. App. 3d 116, 303 N.E.2d 142, the Fourth District concluded that all denials of the right to intervene are final and appealable orders. We note, however, that decision did not discuss the application of Rule 304(a); rather, it cited as authority for its conclusion the case of *Krause v. White* (1950), 341 Ill. App. 322, 93 N.E.2d 429, a decision rendered long before the enactment of section 50(2). Such prior authority, however, was felt to be no longer applicable, in light of the enactment of section 50(2) and Rule 304(a), by the court in *Monticello College*, and we consider this view to be the better one.

Rule 304(a) was discussed in *Koester v. Yellow Cab Co.* (1974), 18 Ill. App. 3d 56, 309 N.E.2d 269, which involved a negligent action brought by three employees of Illinois Bell Telephone Company (Bell) against Yellow Cab for injuries received while passengers in a taxicab. Because

they were injured while in the furtherance of Bell's business, the plaintiffs also received workmen's compensation benefits. After a jury verdict in favor of the plaintiffs, Yellow Cab moved for a new trial and Bell attempted intervention. The motion for new trial was granted, but Bell's petition was denied in an order lacking the finality language of Rule 304(a). The appellate court did not mention either *Timpone* or *Monticello College* when concluding that Rule 304(a) was not applicable because Bell had never become a party to the proceedings by virtue of the denial of its petition. This logic appears circular, however, in that it applied only to an unsuccessful intervenor at any point in the litigation, and it appears to us that it could only frustrate the purpose behind Rule 304(a) as applied to denials of intervention petitions. We think it clearly contradicts the holding of *Timpone* as well as what we believe to be the proper explanation of Rule 304(a) as given by the supreme court in *Timpone* in its interpretation of section 50(2).

It is our belief that the reasoning of *Timpone* and *Monticello College* should be followed in the instant case, as they further the purpose of Rule 304(a), as indicated by the cases involving third party complaints, to furnish a predictable guide in determining when an order of the trial court is final and appealable in actions involving multiple parties or claims for relief. In addition, they provide a rule allowing a trial court some degree of flexibility when deciding a petition to intervene in that by not making the order final and appealable when it is entered, it can review its denial of the petition as the trial develops. If, as appears to have been done in the instant case, the trial judge feels during the course of the trial that his initial order was correct, he can make it appealable at that time by inserting the appropriate language.

We are supported in this belief by the Supplement to Historical and Practice Notes to Rule 304 (Ill. Ann. Stat., ch. 110A, par. 304, Supplement to Historical and Practice Notes, at 206 (Smith-Hurd Supp. 1978)), where after pointing out that the decisions were conflicting as to whether a Rule 304(a) finding is required before an order dealing with intervention is appealable, it was stated:

> "It has been held that an order denying intervention is a final judgment within the meaning of Rule 301 but that it does not require a Rule 304 finding in order to make it appealable prior to the disposition of the related litigation on the grounds that the petitioner for intervention is not yet a party to the litigation. See Koester v. Yellow Cab Co., 18 Ill. App. 3d 56, 309 N.E.2d 269 (1st Dist. 1974). But the matter is not settled: other districts have decided that a Rule 304 finding is required to make an order dealing with intervention appealable. Monticello College v. Scott, 13 Ill. App. 2d 133, 299 N.E.2d 778 (5th Dist. 1973). This result,

which relies on the reasoning of Board of Trustees of the University of Illinois v. Timpone, 28 Ill. 2d 255, 190 N.E.2d 786 (1963) seems the more consonant with the interpretation given Rule 304(a) in situations which present similar issues of policy, such as those dismissing third party complaints. It also seems more consistent with the rule's application to multiple claims for relief as well as multiple parties."

■■ Applying the holdings of *Timpone* and *Monticello College* to the facts here, the order of June 5, 1975, was not appealable, but it did become so on October 7, 1975, when the trial court made its Rule 304(a) finding and, because a notice of appeal was filed within 30 days of that order, this court has jurisdiction to hear this appeal.

We now consider the second issue presented on appeal as to whether McDonald should have been permitted to intervene as a matter of right. In this regard, section 26.1(1) provides:

"(1) Upon timely application anyone shall be permitted as of right to intervene in an action: * * * (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by a judgment, decree or order in the action; * * *." (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(1).)

To support a right to intervene, petitioner must show that the representations of his interests by existing parties is or may be inadequate. (*Fiorito v. Jones* (1970), 45 Ill. 2d 15, 256 N.E.2d 833.) In *Fiorito*, the petition to intervene alleged that the existing parties were about to ignore or waive the payment of interest on tax monies which had been ordered to be refunded. The trial court denied intervention and, on direct appeal, the supreme court affirmed, stating "[t]here is absolutely nothing in the record to substantiate the allegation * * *." (45 Ill. 2d 15, 18, 256 N.E.2d 833, 834.) Thus, the court impliedly ruled that the record must support the allegations of inadequacy of representation.

■■ In his petition to intervene here, McDonald alleges only that "the representation of Petitioner's interest by existing parties will or may be inadequate and Petitioner may be bound by a judgment in this cause." This allegation, of course, is conclusory and does not meet the requirements of *Fiorito* that the record substantiate the inadequacy of representation. In his brief here, however, McDonald argues that a sufficient showing of misfeasance by Harris, as general mortgage trustee, appears in the Federal court class action filed against Chicago Milwaukee Corporation (Chicago), Milwaukee Road, and certain directors of both corporations, which was attached to his petition to intervene. The Federal action sought a redetermination of available net income for the years 1969 to 1974, inclusive, and for the payment of unpaid interest on bonds for the years 1971, 1972 and 1973, and it was alleged that Harris accepted without

objection Milwaukee Road's financial statements which failed to include in available net income the earnings of wholly owned subsidiaries, that it failed to pay dividends out of available earned surplus, that it failed to redetermine available net income for the years 1969 to 1973, and that it acquired two companies in 1973 and 1974 by the unlawful use of funds which should have been applied to the payment of interest on bonds.

■■ It has been held that bondholders have no absolute right to intervene unless charges of fraud, collusion, misfeasance or bad faith on the part of the trustee can be supported by fact. (*Village of Lansing v. Sundstrom* (1942), 379 Ill. 121, 39 N.E.2d 987; *Anderson v. Elliott* (1954), 1 Ill. App. 2d 448, 117 N.E.2d 876.) While in the instant case, the well-pleaded facts must be accepted as true (*Lurie v. Rupe* (1964), 51 Ill. App. 2d 164, 201 N.E.2d 158, *cert. denied* (1965), 380 U.S. 964, 14 L. Ed. 2d 154, 85 S. Ct. 1108), from our examination of the record we find no substantiation of the allegation that the representation of McDonald's interest is or may be inadequate. It is lacking in factual allegations that Harris was not diligent in its defense of the action or that there was collusion between Harris and Milwaukee Road, or that Harris acted in bad faith. Harris was acting for the benefit of the bondholders in formally requesting a change in the accounting procedures in accordance with the I.C.C. order and by defending this position in the declaratory judgment action. The allegations in the Federal complaint, which McDonald contends is a sufficient showing of misfeasance, is countered by Harris's position that the express terms of the general mortgage provide that the trustee may rely on statements, reports and opinions furnished to it. In addition, the financial statements referred to in the Federal action concerned a request for the payment of interest for the years 1971, 1972 and 1973, which are not involved in the declaratory action. The fact that McDonald would like the defense to proceed in a particular manner to aid his Federal action is not sufficient to establish inadequate representation. Other courts have held that mere difference of opinion as to how the litigation should be conducted is not indicative of such inadequacy. *Stadin v. Union Electric Co.* (8th Cir. 1962), 309 F.2d 912, *cert. denied* (1963), 373 U.S. 915, 10 L. Ed. 2d 415, 83 S. Ct. 1298; *In re Schommer* (7th Cir. 1940), 112 F.2d 311, *cert. denied* (1940), 311 U.S. 697, 85 L. Ed. 451, 61 S. Ct. 75.

Thus, while it is true that McDonald and the other bondholders may be bound by a decision in the declaratory judgment action because they are in privity with Harris, as trustee, it appears to us that McDonald has not shown that Harris is or may inadequately represent their interest. Therefore, we conclude that the court properly found that petitioner did not have a right to intervene.

■■ ■ Turning to the question of whether McDonald met the standards for permissive intervention, we note that section 26—1(2) provides:

"(2) Upon timely application anyone may in the discretion of the

court be permitted to intervene in an action: * * * (b) when an applicant's claim or defense and the main action have a question of law or fact in common." (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(2).)

Permissive intervention is a matter of the trial court's discretion, and its judgment will not be reversed unless a clear abuse of discretion is shown. (*Steelworkers Local 5292 v. Bailey* (1975), 29 Ill. App. 3d 392, 329 N.E.2d 867; *Elmhurst-Chicago Stone Co. v. Village of Bartlett* (1975), 26 Ill. App. 3d 1021, 325 N.E.2d 412.) In the instant case, we see no abuse of discretion in the denial of leave to intervene. It is established that an intervenor must take the suit as he finds it and, where intervention would result in the injection of many new and complicated issues, it may be denied. (*Hairgrove v. City of Jacksonville* (1937), 366 Ill. 163, 8 N.E.2d 187; *Hurley v. Finley* (1955), 6 Ill. App. 2d 23, 126 N.E.2d 513.) It is true that both the declaratory judgment and the Federal actions here concern the computation of net income available to pay interest on bonds; however, different aspects of that computation are involved. The issue in the declaratory judgment action is the effect of the I.C.C. equity accounting order, and only the accounting procedures for 1974 and subsequent years are involved. McDonald attempts to add several new issues in his petition which are the subject of his federal action; namely, the procedures for the years prior to 1974, a question of interpretation of the term "railroad subsidiary" as used in the general mortgage, and whether certain loans should be treated as dividends. Thus, it is not clear that a decision in the declaratory judgment action would affect McDonald's Federal action, either adversely or favorably, since different questions are presented. In any event, there does not appear to be the common question of law or fact required by section 26.1(2).

For the reasons stated, the order denying intervention is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.