BRANDO CONSTRUCTION, INC., Plaintiff-Appellee, v. THE DEPART-
MENT OF TRANSPORTATION *et al.*, Defendants-Appellants (Thos. M. Mad-
den Construction Co., Intervening-Appellant).

First District (1st Division)   No. 84—2055

Opinion filed December 30, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellants State of Illinois, Department of Transportation, John D. Kramer, and H. W. Monroney.

James R. Dashiell, of Chicago (McNeela & Griffin, Ltd., of counsel), for appellant Thos. M. Madden Construction Co.

Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., of Chicago (Alan Rosen, Robert D. Allison, and Norman T. Finkel, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Pursuant to Supreme Court Rules 304(a) and 307(a)(1) (87 Ill. 2d Rules 304(a), 307(a)(1), defendants, State of Illinois, Department of Transportation (IDOT), John D. Kramer and H.W. Monroney, appeal from an interlocutory order entered by the circuit court of Cook County granting preliminary injunctive and declaratory relief to plaintiff, Brando Construction, Inc. Intervenor, Thos. M. Madden Construction Co. (Madden), appeals from the circuit court's denial of its petition for intervention. Plaintiff, as low bidder on a State construction project, sought: (1) a preliminary injunction to enjoin defendants from awarding the project to Madden, second lowest bidder, and (2) specific performance of the alleged contract between IDOT and plaintiff on the grounds that it had complied with all applicable rules and regulations promulgated by IDOT with respect to the bidding procedure. Madden sought the right to intervene to protect its interests in the contract. The circuit court denied Madden's petition for intervention and granted plaintiff's motion for a preliminary injunction and declaratory relief.

The underlying dispute concerns a bid which plaintiff had submitted to IDOT in response to a general advertisement for bids on the construction work of a State highway project. On July 10, 1984, Richard Brooks, chief contract officer for IDOT, informed Randall

Rathmann, plaintiff's estimator and general superintendent of field operations, by telephone that plaintiff was low bidder on the project at issue. Brooks further informed Rathmann that he had five working days, *i.e.*, until July 17, 1984, within which to mail to IDOT's Springfield offices the necessary forms indicating compliance with the DBE/WBE utilization plan (the plan) which indicates the extent of participation in the proposed project by disadvantaged business enterprises (DBEs) or women-owned business enterprises (WBEs). Brooks told Rathmann that the paperwork had to be either hand-delivered to IDOT's Springfield offices by 4:30 p.m. on July 17 or postmarked by July 17, 1984. Failure to timely comply would render the bid nonresponsive.

On July 27, 1984, plaintiff received a letter from H.M. Monroney, Director of Highways for IDOT, which informed plaintiff that because it had not submitted its plan within the required time period, its bid was rejected as nonresponsive and it would not be allowed to rebid on the project in the event the project was readvertised. Rathmann immediately called IDOT's Springfield office and spoke with Brooks, who informed Rathmann that the envelope was postmarked July 18, 1984. When Rathmann explained that he had personally mailed the plan before the last 5:30 p.m. mail pickup on July 17, 1984, Brooks told him to send a letter to IDOT detailing the circumstances.

On July 30, 1984, Rathman telephoned IDOT and spoke with Joseph Crowe, who advised Rathmann to come to Springfield as soon as possible and explain the situation in person. Several minutes after terminating the conversation, Crowe telephoned Rathmann and informed him that he had just learned that the project "had already gone to construction" and that Madden, as second low bidder, was suggested as the contractor to be awarded the project. Rathmann told Crowe that he and Vito Brandonisio, plaintiff's president, would go to Springfield anyway. In the interim, plaintiff filed a complaint with the post office.

On July 31, 1984, Rathmann and Brandonisio met with Ronald Eckert of IDOT and explained to Eckert that they had mailed the Plan on July 17, 1984. Eckert told them to write down all the facts and mail it to him. Brandonisio mailed the necessary information on August 1, 1984. Six days later, Rathmann telephoned Ingvy Bloomquist, project engineer for IDOT, and was informed that a preconstruction meeting had been set up with Madden for August 13, 1984. The following day, August 8, 1984, plaintiff filed its verified complaint and motion for a temporary restraining order and/or preliminary injunction, requesting the court to: (1) enter a declaratory judgment or-

der declaring that plaintiff is the low, responsive, responsible bidder on the project and that plaintiff's mailing of the plan was timely and sufficiently complied with all bidding requirements; (2) enter orders temporary, preliminary, and permanent, without notice or bond, enjoining and/or restraining defendants from awarding the contract at issue to anyone other than plaintiff pending further order of the court; and (3) order defendants to specifically perform the contract at issue with plaintiff.

On August 9, 1984, the circuit court entered a temporary restraining order restraining defendants "from awarding a construction contract to anyone other than plaintiff with respect to" the project at issue, pending further order of the court. Shortly thereafter, Madden filed its emergency motion to intervene as a party defendant. The circuit court denied Madden's motion on the ground that it lacked standing to intervene. Defendants then filed their answer to plaintiff's complaint. Subsequently, Madden filed an emergency motion for reconsideration of denial of intervention, amending his original petition to seek the same relief against defendants as sought by plaintiffs. The circuit court again denied Madden's motion on the ground that Madden lacked standing because it had no vested right in the contract.

Thereafter, following a hearing on plaintiff's motion for preliminary injunctive and declaratory relief, the circuit court found, *inter alia*, that plaintiff had timely mailed the plan and had sufficiently complied with all of IDOT's necessary bidding requirements, and entered its order on August 20, 1984, which: (1) restrained and enjoined the State of Illinois and all defendants from awarding the contract at issue to Madden or anyone other than plaintiff; and (2) ordered the State of Illinois and all defendants to specifically perform the contact at issue with plaintiff. Subsequently, on August 23, 1984, the circuit court entered its amended order, *nunc pro tunc* as of August 20, 1984, which added the finding that because plaintiff's bid was approximately $182,000 less than Madden's, the interest of the Illinois taxpayers is furthered by the preliminary injunction. Defendants' and Madden's timely appeals followed.

All purchases and contacts entered into by any State agency, including IDOT, are subject to the provisions of the Illinois Purchasing Act (the Act) (Ill. Rev. Stat. 1983, ch. 127, par. 132.1 *et seq.*), which establishes the procedure for procuring competitive bids and authorizes each State agency to adopt "additional rules governing procurement practices and procedures for that agency." (Ill. Rev. Stat., 1984 Supp., ch. 127, par. 132.5.) Acceptance or rejection of bids is discre-

tionary with the State agency; and if the agency rejects all bids, it may readvertise for new bids. Ill. Rev. Stat. 1983, ch. 127, par. 132.4.

■ On appeal, defendants first allege that plaintiff, as a disappointed bidder on a State contract, does not have standing to seek judicial review of the award of that contract to another bidder. While we are cognizant that this standing issue was raised by defendants at trial level only as to Madden and not as to plaintiff, because the parties on appeal have argued and briefed this issue and, in our view, the matter is of significant public importance, we elect to consider plaintiff's contention. See *Doran v. Cullerton* (1972), 51 Ill. 2d 553, 283 N.E.2d 865.

In support of their position, defendants rely on *Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 84 L. Ed. 1108, 60 S. Ct. 869, in which the United States Supreme Court held that bidders for government contracts have no standing in a Federal court to obtain a declaratory judgment and injunction restraining officials and agents of an executive department from executing public contracts. In *Perkins*, producers of iron and steel sought to enjoin specifically enumerated Federal government officials from requiring the statutory stipulation as to minimum wages in contracts with steel and iron manufacturers. The district court dismissed plaintiffs' motion for preliminary injunction on the grounds that, *inter alia*, plaintiffs lacked jurisdiction and standing. The United States Court of Appeals for the District of Columbia reversed and remanded with instructions that all government officials, whether or not party to the suit, were restrained from applying the wage determination to bidders throughout the nation.

The United States Supreme Court reversed the court of appeals and affirmed the judgment of the district court with respect to plaintiffs' lack of standing, holding that bidders on government contracts do not derive enforceable rights against a government agency. The court further observed that:

> "Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases.
>
> * * *
>
> Courts should not *** subject purchasing agencies of Government to the delays necessarily incident to judicial scrutiny at the instance of potential sellers, which would be contrary to traditional governmental practice and would create a new concept of judicial controversies." (*Perkins v. Lukens Steel Co.* (1940), 310 U.S. 113, 127-30, 84 L. Ed. 1108, 1114-16, 60 S. Ct.

869, 876-78.)

The rationale of *Perkins* insofar as it relates to governmental freedom of contract, was held to be applicable to Illinois State contracts in *Alfred Engineering, Inc. v. Fair Employment Practices Com.* (1974), 19 Ill. App. 3d 592, 312 N.E.2d 61.

Applying the rationale of *Perkins* in the context of a due process argument, the Illinois Supreme Court in *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 395 N.E.2d 1376, addressed the issue of a bidder's protectible property interest in State government contracts offered pursuant to the Illinois Purchasing Act. Recognizing that the Act expressly states that "[a]ny and all bids may be rejected," the *Polyvend* court held that bidders do not have a recognizable property right within the meaning of the Federal or State constitutions. Similarly, in *Estey Corp. v. Matzke* (N.D. Ill. 1976), 431 F. Supp. 468, the district court, citing *Perkins*, held that an unsuccessful bidder on a State contract lacks standing to challenge the award of that contract.

Application of *Perkins, Polyvend, Inc.* and *Estey Corp.* to the case at bar raises an important question as to whether plaintiff, as an unsuccessful bidder on a State contract, has standing to file suit against the State, its agency and agency employees. In analyzing the issue, it is necessary to distinguish the instant situation from those situations involving either the fundamental right to bid or the rights of a bidder whose on-going, existing relationship has been interrupted by the State. With respect to the former, Illinois courts have held that the right to bid is a legally protectible interest. (*Master Printers Association v. Board of Trustees* (N.D. Ill. 1973), 356 F. Supp. 1355.) With respect to the latter, it has been held that a continuous, existing relationship confers upon the bidder an expectation interest which is a legally protectible right. However, this right does not arise where each contract is bid upon separately as in the case at bar. *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223.

Plaintiff attempts to distinguish the line of cases which hold that an unsuccessful bidder lacks standing to initiate a suit challenging the award of a State contract from its own situation by claiming that it cannot be considered a disappointed or unsuccessful bidder because it was the low bidder and it had complied with all the necessary conditions precedent to being awarded the contract. The undeniable fact remains, however, that plaintiff was not awarded the contract for which it had bid. Thus, plaintiff was an unsuccessful and, apparently, a disappointed bidder.

■ Although defendants request that this court make a final determination as to plaintiff's standing, we do not elect to do so. In-

stead, we hold that the orders of the circuit court are vacated and the cause remanded for further proceedings with instructions that specific findings of fact be made as to plaintiff's standing as an unsuccessful bidder to bring this suit consistent with the views expressed herein. Our decision includes the court's order which denied intervention by Madden and found that there was no just reason to delay appeal of the denial. (See *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Harris Trust & Savings Bank* (1978), 63 Ill. App. 3d 1012, 380 N.E.2d 835.) As second lowest bidder on the contract at issue and the party who was to be awarded the contract as a result of plaintiff's noncompliance, we fail to see how Madden's interest in the lawsuit is any less a protectible right than that of plaintiff. Further, in our view, neither plaintiff nor defendants would adequately protect Madden's interest. Thus, pursuant to section 2—408 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—408), if plaintiff is found to have standing, the court should reconsider Madden's petition to intervene.

■ Defendants also assert that the court lacked jurisdiction to entertain plaintiff's allegations of breach of contract by the State on the grounds that pursuant to the Court of Claims Act (Ill. Rev. Stat. 1983, ch. 37, par. 439.1 *et seq.*), all such actions must be brought in the Illinois Court of Claims. Plaintiff admits that it is "attempting to enforce the contract rights expressly bestowed upon it by defendants," but claims that defendants are precluded from raising the jurisdictional issue because defendants deny that a contract exists. We disagree. Regardless of defendants' defense, plaintiff is alleging a contractual action against the State.

Sections 8(a) and 8(b) of the Court of Claims Act (Ill. Rev. Stat. 1983, ch. 37, par. 439.8(a)(b) confer exclusive jurisdiction upon the Illinois Court of Claims to hear and determine the following matters:

"(a) All claims against the state founded upon any law of the State of Illinois ***.

(b) All claims against the state founded upon any contract entered into with the State of Illinois."

In *S.J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 444 N.E.2d 131, the Illinois Supreme Court applied the aforementioned statutory provisions to a situation where a plaintiff, a construction company, sued the State of Illinois for an alleged breach of contract entered into with IDOT for highway construction work. The court upheld the trial court's dismissal of the complaint for lack of jurisdiction on the ground that "[w]hen a private party wants to assert its contractual rights against the State, exclusive jurisdiction remains in the

Court of Claims."

Similarly, in *Ellis v. Board of Governors* (1984), 102 Ill. 2d 387, 466 N.E.2d 202, the Illinois Supreme Court affirmed the dismissal of plaintiff's contract action seeking damages and injunctive relief for lack of jurisdiction. The *Ellis* court held that because the Board of Governors was an arm of the State, exclusive jurisdiction remained with the Illinois Court of Claims.

Based upon the aforementioned statutory and case law regarding the exclusive jurisdiction of the Illinois Courts of Claims with respect to contractual actions against the State and its agencies, we further instruct the court upon remand to resolve the issue of jurisdiction, setting forth specific findings of fact. In addition, we recognize that time has elapsed since the initiation of this cause of action which may necessitate an evaluation by the parties of any change in economic conditions and the continuing need for the disputed contract. Thus, we also instruct the court to review the *status quo* of the parties upon remand.

■ Finally, we note *sua sponte* that the court's order erroneously enjoins the State from entering into a contract with anyone other than plaintiff and directs the State to specifically perform the alleged contract. Pursuant to section one of "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1983, ch. 127, par. 801), the doctrine of sovereign immunity bars the circuit court from entering a mandatory injunction directing the State to take specific action. See *Hudgens v. Dean* (1979), 75 Ill. 2d 353, 388 N.E.2d 1242.

Accordingly, the orders of the circuit court of Cook County, dated August 20, 1984, and August 23, 1984, are hereby vacated and the cause remanded for further proceedings consistent with the views expressed in this opinion.

Vacated and remanded.

BUCKLEY, P.J., and O'CONNOR, J., concur.