**KIM CONSTRUCTION COMPANY, INC., Plaintiff–Appellant,**

v.

**BOARD OF TRUSTEES OF the VILLAGE OF MUNDELEIN, Defendant–Appellee.**

No. 93–1414.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 1993.

Decided Jan. 31, 1994.

---

3. If the expert testimony is not precluded by Rule 704(b), it still must satisfy the standards of Rules 403 and 702.

Stephen C. Schulte, Winston & Strawn, Chicago, IL, Michael J. Abrams, Stephen B. Sutton (argued), Gage & Tucker, Kansas City, MO, for plaintiff-appellant.

Charles F. Marino, David M. Marino (argued), Chicago, IL, for defendant-appellee.

Before PELL, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

In response to an invitation for bids by the Board of Trustees of the Village of Mundelein (the "Board") for the construction of a sanitary sewer line, the Kim Construction Co. ("Kim") submitted a timely bid that met

the Board's specifications for the project. Because two lower bids submitted in response to that invitation contained irregularities, the Board decided to reject all bids and call for a rebidding on the project. Kim did not participate in the rebidding. The Board subsequently awarded the contract to the lowest responsible bidder after the second round of bids. Kim then filed suit, claiming that it had been deprived of a constitutionally protected property interest without due process of law. The district court granted the Board's motion for summary judgment. We agree that Illinois law does not create the property interest that Kim seeks to vindicate, and therefore affirm.

## I. Background

In March 1992, the Board ran an advertisement soliciting bids for a sanitary sewer project, which included the following provision: "The Board of Trustees reserves the right to reject any and all bids and to waive technicalities. Unless the bids are rejected for good cause, award of a contract shall be made to the lowest responsible and responsive bidder." The advertisement also specified that the project was to be funded in part by a grant from the Illinois Environmental Protection Agency (IEPA), and that the contract award would be subject to the IEPA's prior approval. Four bids, including Kim's, were submitted in response to this advertisement. After examining the bids, the village engineer determined that the two lowest bids contained irregularities, and that Kim's bid was the lowest bid which fully conformed to project specifications. Rather than waiving the irregularities and awarding the contract to the lowest bidder, the Board, with the IEPA's concurrence, rejected all bids and advertised for a second round of bidding on the project. No substantive changes were made in project specifications between the first and second round of bidding; thus both rounds were on the same project. In response to this decision, Kim asserted that the Board's action was unauthorized, and requested that it be awarded the contract as the lowest responsible and responsive bidder. Approximately two weeks later, the Board adopted a resolution confirming its rejection of all first round bids and its authorization of

a rebidding on the project. Kim refused to participate in the rebidding.

At the close of the second round of bidding in September 1992, the Board awarded the contract to the lowest responsible bidder, whose bid was substantially lower than that submitted by Kim in the first round. Kim then filed an action pursuant to 42 U.S.C. § 1983, seeking to prevent the Board from rejecting all first round bids and from awarding the contract to any party which submitted a second round bid. The district court denied Kim's request for injunctive relief on the basis of its failure to show that it had a reasonable chance of prevailing on the merits. Kim then filed an amended complaint seeking money damages in compensation for the losses it had incurred due to the Board's rejection of its first round bid. The district court granted summary judgment in favor of the Board. Kim appeals.

## II. Analysis

■ Kim's claim that it was deprived of a property interest in violation of the Fourteenth Amendment requires two separate inquiries: first, whether Kim possessed a constitutionally protected property interest in the contract award, and second, whether Kim was deprived of that interest without due process. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Listenbee v. City of Milwaukee*, 976 F.2d 348, 351 (7th Cir.1992). Unless Kim can establish as a matter of federal constitutional law that its claim is based on a protected property interest, the issue of whether it was afforded due process before being deprived of that interest does not arise. See *Loudermill*, 470 U.S. at 538, 541, 105 S.Ct. at 1491, 1492–93; *Listenbee*, 976 F.2d at 351; *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988).

■ To have a constitutionally protected property interest in the award of a municipal contract, an individual must have a "legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A proper-

ty interest for purposes of the Due Process Clause is created by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.; see Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) (an interest is "property" under the Fourteenth Amendment "if there are such rules or mutually explicit understandings that support [a] claim of entitlement...."); *Cushing v. City of Chicago,* 3 F.3d 1156, 1159–60 (7th Cir.1993) (same). As this court observed in *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983), "property is what is securely and durably yours under state ... law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Id.* at 948.[1]

■ In the absence of an underlying property interest, the Due Process Clause does not require states to obey their own procedural rules in awarding municipal contracts. *See Szabo,* 823 F.2d at 1081 (citing *Olim v. Wakinekona,* 461 U.S. 238, 248–51, 103 S.Ct. 1741, 1747–48, 75 L.Ed.2d 813 (1983)). In *Olim,* the Supreme Court observed that "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." 461 U.S. at 250, 103 S.Ct. at 1748. Although "[a] State may choose to require procedures against deprivation of substantive rights, ... in making that choice, the State does not create an independent substantive right." *Id.* at 250–51, 103 S.Ct. at 1748 (citing *Hewitt v. Helms,* 459 U.S. 460, 471, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)). Thus, in *Swartz v. Scruton,* 964 F.2d 607 (7th Cir.1992), we held that *Olim* precluded a state university professor's claim that he was arbitrarily deprived of a protected property interest in the method used to determine his merit pay in-

crease. 964 F.2d at 610. Because "[p]rocedural interests under state law are not themselves property rights that will be enforced in the name of the Constitution," the plaintiff could not claim a property interest "in a *method* of calculation of merit pay." *Id.* (emphasis in original; internal quotation, citation omitted); *see also Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988) *(en banc ),* cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). By the same reasoning, in *Szabo* we rejected the disappointed bidder's claim that it had a constitutional right to have established competitive bidding procedures applied in a nonarbitrary manner. 823 F.2d at 1080–81. "[W]hen there is no substantive property interest there is no review of 'the merits' under the due process clause." *Id.* at 1081.

■ Whether Kim has a property interest in being awarded the municipal contract on the basis of its first round bid is determined by Illinois law. *See Bishop v. Wood,* 426 U.S. 341, 344 & n. 7, 96 S.Ct. 2074, 2077 & n. 7, 48 L.Ed.2d 684 (1976); *Hohmeier v. Leyden Community High School Dist. 212,* 954 F.2d 461, 463–64 (7th Cir.1992). In *Polyvend, Inc. v. Puckorius,* 77 Ill.2d 287, 32 Ill.Dec. 872, 395 N.E.2d 1376 (1979), *appeal dismissed for want of substantial federal question,* 444 U.S. 1062, 100 S.Ct. 1001, 62 L.Ed.2d 744 (1980), the Illinois Supreme Court held that when a state entity's advertisement for bids contains explicit language reserving its right to reject any and all bids, no bidder can claim a constitutionally protected property interest in being awarded the contract. *Id.* at 1379; *see also Brando Constr., Inc. v. State Dep't of Transp.,* 139 Ill.App.3d 798, 94 Ill.Dec. 255, 258, 487 N.E.2d 1132, 1135 (1985); *Northwest Disposal Co. v. Village of Fox Lake,* 119 Ill.App.3d 546, 75 Ill.Dec. 8, 11, 456 N.E.2d 691, 694 (1983). This court accordingly has held that in Illinois, a disappointed bidder for a public

---

1. *See also McCammon v. Indiana Dep't of Financial Institutions,* 973 F.2d 1348, 1350 (7th Cir. 1992) (claim of entitlement is one on which people rely in their daily lives) (citations, internal quotations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 1282, 122 L.Ed.2d 675 (1993); *Wallace v. Robinson,* 940 F.2d 243, 246–47 (7th Cir.1991) *(en banc )* (an entitlement is "something you hold

unless prescribed conditions of its defeasance can be established"), *cert. denied,* —— U.S. ——, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992); *Baja Contractors, Inc. v. City of Chicago,* 830 F.2d 667, 676–77 & n. 8 (7th Cir.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988); *Szabo,* 823 F.2d at 1080.

contract lacks a property interest in the award, even if that bidder has submitted the lowest conforming bid for the project. *Szabo*, 823 F.2d at 1080 (citing *Coyne–Delany Co. v. Capital Development Bd.*, 616 F.2d 341 (7th Cir.1980) *(per curiam))*.

To counter this result, Kim advances two arguments. First, Kim contends that Ill. Rev.Stat. ch. 24, para. 8–9–1 (1990) [2] contains mandatory language requiring a municipality to award a contract "to the lowest responsible bidder after advertising for bids." In relevant part, para. 8–9–1 provides that

> any work or public improvement . . . shall be constructed . . . by a contract let to the lowest responsible bidder after advertising for bids, in the manner prescribed by ordinance, except that any such contract may be entered into . . . without advertising for bids, if authorized by a vote of two-thirds of all the aldermen or trustees then holding office;

Ill.Rev.Stat. ch. 24, para. 8–9–1 (1990). Kim maintains that because it was the lowest responsible bidder after the first round of bidding, it was entitled by statute to the contract award.

■ In *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the Supreme Court held that in order to create a protected liberty interest, a state regulation must contain specific directives to the decisionmaker such that if the regulation's "substantive predicates" are met, a particular outcome necessarily follows. *Id.* at 463, 109 S.Ct. at 1910. These principles are equally applicable to the analysis of property interests. *See Hohmeier*, 954 F.2d at 466; *Wallace v. Robinson*, 940 F.2d 243, 246–47 (7th Cir.1991) *(en banc )*, *cert. denied*, —— U.S. ——, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992). In order for the rule in *Thompson* to apply, Kim must show that at the close of the first round of bids, the Board was without discretion to call for a second round of bidding, and instead was legally required to award the contract to Kim. *See Thompson*, 490 U.S. at 464–65 & n. 4, 109 S.Ct. at 1910–11 & n. 4.

Under para. 8–9–1, the Board was permitted to establish by ordinance the procedures that would govern the solicitation of bids. As the district court observed in its order denying injunctive relief, a statute which grants a municipality the power to specify the manner of bidding, or to dispense with competitive bidding by a two-thirds vote and choose an entirely different method of awarding public contracts, cannot reasonably be read as imposing a binding obligation on the municipality to award a public contract to the lowest responsible bidder after the first round of bids. *See Olim*, 461 U.S. at 250–51 & n. 12, 103 S.Ct. at 1748 & n. 12 (an expectation that a particular procedure will be followed is not, without more, an interest protected by the Due Process Clause); *Swartz*, 964 F.2d at 609–10 (same); *Hohmeier*, 954 F.2d at 465 (a rule which lacks "binding force" cannot create a protected property interest). Thus, the language of para. 8–9–1 is not "mandatory" in the relevant sense, since the statute allows the Board to exercise its discretion in prescribing the manner of bidding. *See Thompson*, 490 U.S. at 464–65, 109 S.Ct. at 1910–11. In particular, the statute does not preclude the Board from establishing a bidding procedure by which the Board reserved its right of rejection. Under *Polyvend*, this express reservation of the right to reject any and all bids defeats Kim's claim of a constitutionally protected entitlement to the contract award. 32 Ill.Dec. at 875, 395 N.E.2d at 1379.

This conclusion is further supported by the state administrative regulations which govern the award of public contracts for sewage treatment facilities that receive IEPA funding. Section 360 of Title 35 of the Illinois Administrative Code sets forth the general conditions of IEPA grants for sewage treatment works under the Anti–Pollution Bond Act of 1970.[3] Section 360.302(d)(8)(B) of the Code provides: "The grantee may reserve the right to reject all bids. Unless all bids are rejected, award shall be made to the low, responsive, responsible bidder after the bid evaluation has been submitted to the Agency

---

**2.** Recodified as 65 ILCS 5/8–9–1 (1992).

**3.** *See* Ill.Rev.Stat. ch. 127, para. 451 et seq. (1990), recodified as 30 ILCS 405/1 et seq. (1993).

and written notice of Agency approval has been received by the grantee." Ill.Admin.Code tit. 35, § 360.302(d)(8)(B). Under this regulation, the Board, as a grantee of an IEPA-funded project, was expressly authorized to reserve the right to reject all bids. Since the Board did reject all bids in the first round, it was not required to accept the bid of the lowest responsible bidder. Moreover, because the Board's invitation to bid advised all prospective bidders that the bidding process was governed by this regulation, Kim's claim of entitlement on the basis of "rules or mutually explicit understandings" creating a property right in the contract award proves untenable. See Perry, 408 U.S. at 601, 92 S.Ct. at 2699.

■ Second, Kim argues that Illinois courts have recognized the "very limited due process right for unsuccessful bidders as established under the rationale of Three Rivers," Northwest Disposal Co., 75 Ill.Dec. at 12, 456 N.E.2d at 695 (citing Three Rivers Cablevision, Inc. v. City of Pittsburgh, 502 F.Supp. 1118, 1128–29 (W.D.Pa.1980)), and that Kim meets the criteria announced in Northwest Disposal for establishing a protected property interest in the contract award. In Three Rivers, the Western District of Pennsylvania concluded that under Pennsylvania law, a municipality "was required ... to award [the contract] to the lowest responsible bidder," and that in determining who that bidder was, "the awarding party must exercise its discretion in a non-arbitrary manner." 502 F.Supp. at 1130–31. Insofar as the court's decision in Three Rivers implies that Kim has a property interest in the Board's observance of its own procedures, it has been overruled by Olim, 461 U.S. at 248–51, 103 S.Ct. at 1747–48. See Szabo, 823 F.2d at 1082 ("what a district court could state with confidence in Three Rivers in 1980 was washed away by the Supreme Court in Olim in 1983"); see also Archie, 847 F.2d at 1217 (state law procedural entitlements are not themselves "property" for purposes of the federal constitution) (citations omitted). Furthermore, in order to create a constitutionally protected property interest, a state rule or regulation must define "non-arbitrary" in a way that substantively limits the Board's discretion by man-

dating a particular result when certain clearly stated criteria are met. See Thompson, 490 U.S. at 463, 109 S.Ct. at 1910; Listenbee, 976 F.2d at 353; Hohmeier, 954 F.2d at 466; Wallace, 940 F.2d at 246–47. Where "the requisite ... mandatory language" is lacking, no protected interest is created, see Thompson, 490 U.S. at 464, 109 S.Ct. at 1910–11, and Kim's insistence that the Board acted in an arbitrary and capricious manner does not state a constitutional claim. See id.; Olim, 461 U.S. at 250–51, 103 S.Ct. at 1748; Szabo, 823 F.2d at 1081.

To the extent that the decision in Three Rivers rested on a proposition of Pennsylvania law, it is, of course, inapplicable to this case. Kim's reliance on Pataula Elec. Membership Corp. v. Whitworth, 951 F.2d 1238 (11th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992), is similarly misplaced, since the court in that case determined that Georgia law creates a property interest in favor of the lowest responsible bidder. In Pataula, the state statute mandated competitive bidding, 951 F.2d at 1242, and state regulations provided specific directives for determining the lowest responsible bidder. Id. at 1242–43. Most importantly, under Georgia law, the right to reject any and all bids does not preclude the creation of a protected property interest and cannot be used to override the mandates of the state competitive bidding statute and regulations. Id. at 1243 (citations omitted). Pataula is thus distinguishable from our case by virtue of the material differences in the state laws governing competitive bidding in Georgia and Illinois. In Key West Harbour Dev. Corp. v. City of Key West, 987 F.2d 723 (11th Cir. 1993), the Eleventh Circuit concluded that unlike Georgia law, Florida law does not create a protected property interest which entitles the lowest responsible bidder to a contract award because the applicable state statute does not contain sufficient directives to the decisionmaker to support a claim of entitlement to the award. Id. at 728–29. The Sixth Circuit has also distinguished Pataula on the same ground as we do, namely, that Michigan law does not create a property interest on the part of disappointed bidders, and that a decisionmaker's authority to reject

any and all bids precludes the creation of a property interest protected by the Due Process Clause. *See United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 34–35 (6th Cir.1992).

Kim also draws a distinction between the federal constitutional aspect of *Northwest Disposal,* which has not survived the Supreme Court's decision in *Olim,* 461 U.S. at 238, 103 S.Ct. at 1742, and its continued vitality as a proposition of state law creating a substantive property interest under *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. In *Northwest Disposal,* the court recognized a due process right for disappointed bidders who could demonstrate that "there was (1) a regulated bidding procedure, (2) material compliance with the procedure by the unsuccessful bidder, and (3) material and significant noncompliance with the procedure by the successful bidder." 75 Ill.Dec. at 12, 456 N.E.2d at 695. By Kim's reasoning, *Northwest Disposal* provides the requisite state law basis for its claim of entitlement to the contract award. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Archie,* 847 F.2d at 1217. Even if we were to read *Northwest Disposal* as establishing a state-created entitlement to a public contract, and thus giving rise to the protected property interest invoked by Kim, it is not applicable to the facts of this case. Although Kim participated in a "regulated bidding procedure," the procedure was one in which the municipal board could legally reserve its right to reject all bids, *see* Ill.Admin.Code tit. 35, § 360.302(d)(8)(B), and did so. The Illinois Supreme Court's decision in *Polyvend* again applies to prevent any bidder from claiming a constitutionally protected property interest in the contract award resulting from this bidding procedure. 32 Ill. Dec. at 875, 395 N.E.2d at 1379. Moreover, although Kim's bid was determined to be the lowest first round bid containing no irregularities, it was significantly higher than two other first round bids, as well as being higher than the second round bid that was ultimately accepted. It is thus questionable whether Kim can meet the third part of the test, which requires it to show "material and significant noncompliance ... by the successful bidder." The rule in *Northwest Disposal,* insofar as it may create a limited property interest in public contract awards that the lowest responsible bidder can enforce, is therefore inapplicable.

The other cases upon which Kim relies to show that Illinois recognizes the right of disappointed bidders to claim the protection of state competitive bidding statutes are inapposite. In *Stanley Magic–Door, Inc. v. City of Chicago,* 74 Ill.App.3d 595, 30 Ill.Dec. 499, 500–02, 393 N.E.2d 535, 536–38 (1979), it was established that disappointed bidders have standing in state court to invoke the procedural protections of the competitive bidding statute. *See also Court Street Steak House, Inc. v. Tazewell County,* 249 Ill. App.3d 918, 189 Ill.Dec. 58, 619 N.E.2d 759 (1993); *Cardinal Glass Co. v. Board of Educ.,* 113 Ill.App.3d 442, 69 Ill.Dec. 329, 332, 447 N.E.2d 546, 549 (1983).[4] Standing to bring a state court claim of deprivation of property rights does not establish a protected property interest. The mere fact that state law provides a means for Kim to vindicate its claim does not imply that the interest asserted is protected by the Due Process Clause. As we observed in *Archie,* absent a protected property interest, "the violation of state law is not itself [a] violation of the Constitution." 847 F.2d at 1217. The cases cited by Kim serve, moreover, to demonstrate the weakness in Kim's argument that the district court's construction of Ill.Rev. Stat. ch. 24, para. 8–9–1 rendered it meaningless. The district court only determined that para. 8–9–1 does not create a constitutionally protected property interest, not that Kim had no standing to bring a claim in state court for a violation of the statute, or that its claim would have had no possibility of success under state law. *See id.; Szabo,* 823 F.2d at 1081; *see also Campbell v. City of Champaign,* 940 F.2d 1111, 1113 (7th Cir.

---

4. In *Court Street Steak House,* the court noted that "the award of a contract to a bidder involves the exercise of discretion on the part of the Board, which discretion will not normally be interfered with by the courts," 189 Ill.Dec. at 59–

60, 619 N.E.2d at 760–61 (citations omitted). Rather than providing support for Kim's position, this observation undermines Kim's claim of a protected property interest in the contract

1991); *Brown v. Brienen,* 722 F.2d 360, 364 (7th Cir.1983).

The Board has maintained that the underlying purpose of the Illinois responsible bidder statute was served by its action in this case. *See Beaver Glass & Mirror v. Board of Educ.,* 59 Ill.App.3d 880, 17 Ill.Dec. 378, 381–82, 376 N.E.2d 377, 380–81 (1978) (statute exists to protect taxpayers, not disappointed bidders). The bidder who was ultimately awarded the contract submitted bids in both rounds of bidding that were substantially lower than Kim's first round bid, and the costs to the municipality were thus kept at a minimum. *Cf. Szabo,* 823 F.2d at 1081 ("it is not arbitrary to award a contract to the low bidder"). In response to the Board's argument, Kim asks us to consider the long-term implications of the Board's conduct, contending that the Board's decision undermines Kim's reasonable expectation that the procedure outlined in the competitive bidding statute would be followed. Kim further contends that the Board's action ultimately subverted the state legislature's intent in enacting the competitive bidding statute. Although in this instance the municipality was able to save a considerable amount of money in rebuilding its sewer line, Kim claims that the Board's decision could discourage potential bidders from participating in competitive bidding for future municipal projects, ultimately causing the cost of such projects to rise. These observations do little, however, to bolster Kim's claim that it had a protected property interest based on a mutual understanding "implicit in the overall workings" of the competitive bidding system.[5] *Cushing,* 3 F.3d at 1160 (quoting *Colm v. Vance,* 567 F.2d 1125, 1128 (D.C.Cir.1977)); *see ·Perry,* 408 U.S. at 601, 92 S.Ct. at 2699. On the contrary, in Illinois advertised invitations to bid are not irrevocable offers, and an explicit reservation of right to reject all bids prevents the creation of a protected property interest. Kim therefore cannot claim an unconstitutional deprivation of property, and

award. *See Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910.

**5.** This is precisely the sort of policy argument that may be made in state court in support of a

the district court's summary judgment in favor of the Board is

AFFIRMED.

state law claim, *see, e.g., Court Street Steak House,* 189 Ill.Dec. at 58, 619 N.E.2d at 759, but does not serve to establish the existence of a constitutionally protected property interest, *see Archie,* 847 F.2d at 1217–18.