Joseph LARA, Plaintiff,

v.

CITY OF CHICAGO, Matt L. Rodriguez, Raymond S. Risley, Ronald Garcia, and Richard Aguinaga, Defendants.

No. 95 C 7231.

United States District Court,
N.D. Illinois,
Eastern Division.

June 25, 1997.

Susan Bogart, Law Office of Susan Bogart, Chicago, IL, for plaintiff.

Mary Leone Smith, Eileen B. Libby, Dave Justin Seery, Susan S. Sher, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for City of Chicago, Matt L. Rodriquez.

Diane J. Larsen, Michael Patrick Monahan, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL, for Raymond S. Risley, Ronald Garcia.

George E. Becker, George E. Becker & Associates, Chicago, IL, for Richard Aguinaga.

### MEMORANDUM AND ORDER

MANNING, District Judge.

This matter comes before the court on motion of the City of Chicago (the City), Matt L. Rodriguez, Raymond S. Risley, Ronald Garcia, and Richard Aguinaga, defendants herein, to dismiss the complaint of plaintiff, Joseph Lara. Plaintiff's complaint is brought in three counts pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the First and Fourteenth Amendments to the United States Constitution. Defendants now move this court to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. As discussed in greater detail below, this court grants defendants' respective motions to dismiss plaintiff's complaint.

### BACKGROUND

The relevant background of this case is derived from the allegations of plaintiff's complaint which are as follows. Plaintiff is a police officer employed by the Chicago Police Department (CPD), and a member of the Fraternal Order of Police. Defendants are the City and various employees of the CPD, who are parties to this lawsuit in their individual and official capacities.

The complaint further avers that at all relevant times, the Collective Bargaining Agreement (CBA) between the CPD and the Fraternal Order of Police provided that no officer could be punished without just cause. However, despite this provision in the CBA, since as early as 1986 until the present, there has been in effect at the CPD a custom and practice of punishing members of the CPD without cause and in contravention of the CBA. This punishment has been in the form of detailing and transferring officers from more prestigious assignments with the opportunity for overtime to patrol districts.

The complaint also avers that since as early as 1986, there has been in effect at the

CPD a practice of discouraging members of the CPD from protesting unlawful acts and practices committed by CPD officers, including acts and practices involving matters of public concern. This custom and practice has included retaliating against and punishing CPD members for their lawful protest and exercise of clearly established constitutional and federal rights and privileges, including, but not limited to, the exercising of the First Amendment rights to petition, free speech, and association. Forms of retaliation and punishment at the CPD which are indicative of this pattern and practice include, *inter alia*, summary punishment and disciplinary action without just cause and without due process; attempts to conceal unlawful acts and misconduct by CPD officers; unfavorable and unwanted assignments; transfers; demotions; intimidation; humiliation; abuse of authority; abuse of process; the discrediting and undermining of the reputation, integrity and competence of members of the CPD; failure to properly administer CPD policy and procedure; failure to adopt adequate safeguards to insure the proper adjudication of complaints; failure to properly investigate complaints of misconduct and retaliation brought through the CPD's complaint register procedure (CR), including those brought against command members of the CPD; improper use of the investigatory process of the CPD's Internal Affairs Division (IAD); improper use and abuse of the CPD's disciplinary policies and procedures; failure to properly and adequately penalize command members who violate rules and regulations of the CPD; and the reckless disregard for the medical, physical, privacy, and emotional interests and well-being of CPD members.

Beginning on or about August 21, 1993, defendants retaliated against plaintiff for protesting misconduct on the part of defendant Aguinaga who, at the time, was Lieutenant and Commanding Officer of the CPD's Prostitution Unit as well as plaintiff's commanding officer. In that connection, on or about September 13, 1993, because of plaintiff's knowledge of defendant Aguinaga's association with a known prostitute, defendant Aguinaga and defendant Garcia, who was Chief of the Organized Crime Division of the CPD at the time, transferred plaintiff out of the Prostitution Unit and into a uniformed patrol unit in the twenty-first district. The complaint avers that this assignment was intended to and did have the affect of: impugning plaintiff's integrity and credibility; depriving plaintiff of overtime compensation and opportunities; and was designed to shield, insulate, and conceal the official misconduct of defendant Aguinaga.

In or about November 1993, plaintiff protested his assignment to the twenty–first district to defendant Garcia. In so doing, plaintiff indicated to defendant Garcia that, in plaintiff's view, the transfer constituted retaliation against plaintiff for his knowledge of defendant Aguinaga's misconduct and association with a known prostitute. Also in or about November 1993, plaintiff initiated a CR concerning defendant Aguinaga's alleged misconduct and association with a known prostitute.

The complaint further avers that on or about December 16, 1993, defendants Garcia and Aguinaga caused plaintiff to be permanently transferred into the uniformed patrol unit in the twenty-first district. The complaint asserts that the decision to permanently transfer plaintiff was "in retaliation for plaintiff's protesting defendant Aguinaga's misconduct and association with a known prostitute." The complaint alleges that the permanent transfer of plaintiff into the uniformed patrol unit in the twenty–first district was for the purpose of and had the effect of impugning plaintiff's integrity and credibility and was designed to shield, insulate, and conceal the official misconduct of defendant Aguinaga.

As stated, plaintiff's complaint is brought in three counts. Each count incorporates the previously discussed factual allegations. Count I seeks relief against defendants under § 1983, claiming that defendants, operating through a pattern of conduct, deprived and interfered with plaintiff's First Amendment rights and that the defendants have failed to remedy or initiate measures necessary to redress the constitutional violations. Count II also seeks relief under § 1983, alleging that defendants, operating through a

pattern of conduct, deprived and interfered with plaintiff's Fourteenth Amendment rights and that the defendants have failed to remedy or initiate measures necessary to redress the constitutional violations.

Count III seeks relief for unconstitutional customs and practices under § 1983 and § 1985(3). In addition to incorporating the previously discussed factual allegations, count III avers that defendants, operating through a pattern of conduct, deprived and interfered with plaintiff's constitutional and civil rights and that the defendants have failed to remedy or initiate measures necessary to redress the constitutional violations. In that connection, count III avers that defendants have done the following:

> failed to properly supervise, evaluate and review the policies, procedures and customs of the CPD, including but not limited to that of the Personnel Department and the IAD to ensure that the CPD's policies, practices, and customs do not injure, oppress, threaten, intimidate, and interfere with CPD members' free exercise of their constitutional and federal rights; adopted and implemented policies and procedures which oppressed, threatened, intimidated, and interfered with CPD members' free exercise of their federal and constitutional rights; failed to properly train, supervise, and retain command level and supervisory members of the CPD; failed to properly, effectively, and timely discipline and punish members of the CPD found to have engaged in acts that injure, oppress, threaten, intimidate, and interfere with CPD members' federal and constitutional rights, including but not limited to those engaging in sexual harassment and gender based discrimination based on verbal and physical abuse and hostile work environment circumstances; authorized, permitted, and encouraged policies and practices which fostered, promoted, and facilitated actions by and on the part of command level and supervisory personnel which injured, oppressed, threatened, intimidated, and interfered with the federal and constitutional rights of members of the CPD; failed to adopt adequate safeguards to ensure adequate adjudication of the complaint register and investigatory process; failed to adopt adequate safeguards to prevent the improper manipulation and circumvention of the complaint register and investigatory process; failed to adopt adequate policies, procedures, and safeguards to ensure the confidentiality of the complaint register and investigatory process; intentionally and willfully abused the IAD complaint register process by, *inter alia*, bringing unfounded disciplinary, false statement, and other punitive actions against persons who exercised their First and Fourteenth Amendment rights to protest unlawful employment practices including misconduct on the part of other and superior officers; and interfered with the contractual rights of members of the CPD.

Count III further avers that each of the individual defendants have either directly participated in the actions against plaintiff or has acquiesced in and/or approved of them.

## ANALYSIS

### Motions To Dismiss Pursuant To Rule 12(b)(6)

■■ This court now turns to the motions to dismiss the second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). This court recognizes that in ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must presume the well pleaded allegations of the complaint to be true. *See Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). This court also observes that a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) does not test whether the plaintiff will prevail on the merits, but rather tests whether the plaintiff has properly stated a claim upon which relief can be granted. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). This court may dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In this regard, this court must accept as true all well–pled allegations and draw all reasonable

inferences in favor of the plaintiff. *Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991). However, in examining whether a complaint adequately states a claim for which relief may be granted, this court is not required to ignore facts set forth in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992). The complaint does not need to specify the correct legal theory or point to the right statute to survive a Fed. R. Civ. 12(b)(6) motion to dismiss provided that "relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). The complaint must, however, state either direct or inferential allegations concerning all material elements necessary to recover under the chosen legal theory. *See Glatt v. Chicago Park Dist.,* 847 F.Supp. 101, 103 (N.D.Ill.1994).

### I. Statute of Limitations for Plaintiff's Claims Under § 1983 and § 1985(3)

■ Before addressing the parties' arguments with respect to whether the allegations in the complaint sufficiently support a cause of action under § 1983 and § 1985(3), this court initially addresses defendants' argument relative to the applicable statute of limitations. On this issue, defendants argue that the applicable statute of limitations bars plaintiff's § 1983 and § 1985(3) claims based on the allegations in the complaint occurring prior to December 8, 1993, *i.e.,* events which are alleged to have occurred more than two years prior to the filing of the complaint in this case. Plaintiff, however, maintains that his complaint was filed "well within the applicable two year statute of limitations." Plaintiff also argues that "the continuing violation theory" brings his § 1983 and § 1985(3) claims within the limitations period.

■ Actions under § 1983 are governed by the personal injury statute of limitations in the state where the injury occurred. *See Cathedral of Joy v. Village of Hazel Crest,* 22 F.3d 713, 716 (7th Cir.1994). The applicable limitations period for § 1983 claims in Illinois federal courts is Illinois' two–year statute of limitations for personal injury actions. *See*

*id.; Smith v. City of Chicago Heights,* 951 F.2d 834, 837 (7th Cir.1992). The same two–year statute of limitations applies to actions under § 1983 and § 1985(3). *See Wilson v. Giesen,* 956 F.2d 738, 741 n. 4 (7th Cir.1992). Therefore, because plaintiff filed his complaint in this action on December 8, 1995, the statute of limitations for §§ 1983 and 1985(3) apparently bars the First and Fourteenth Amendment claims of plaintiff based on any of the alleged acts that occurred prior to December 8, 1993.

The parties dispute whether plaintiff's § 1983 and § 1985(3) claims based on the allegation that defendants Garcia and Aguinaga caused plaintiff's permanent transfer out of the Prostitution Unit into the uniformed patrol unit in the twenty-first district falls within, or outside of, the limitations period. This dispute stems from the fact that, according to the complaint, the alleged transfer of plaintiff out of the Prostitution Unit and into a uniformed patrol unit in the twenty–first district occurred on or about September 13, 1993; while the complaint also avers that on or about December 16, 1993, defendants Garcia and Aguinaga caused the transfer to be permanent. Defendants contend that, with respect to plaintiff's claims based on the alleged transfer, the applicable limitations period began to run on September 13, 1993, the date on which the transfer allegedly occurred. Defendants maintain that plaintiff's § 1983 and § 1985(3) claims based on the allegation that on or about December 16, 1993, defendants Garcia and Aguinaga effected the "permanent" transfer of plaintiff out of the Prostitution Unit and into a uniformed patrol unit in the twenty–first district are barred by the statute of limitations because, in their view, the alleged injurious act was the transfer which plaintiff avers occurred on September 13, 1993 i.e., outside of the limitations period. In his consolidated response to defendants' respective motions to dismiss, plaintiff, however, argues that the alleged transfer occurring on or about September 13, 1993, was a "detail" as opposed to a "permanent transfer" which was allegedly effectuated on December 16, 1993. Plaintiff posits that "the retaliatory action alleged is defendants' decision to permanently transfer plaintiff from the prostitution

unit" and that "the mere fact [that] defendants detailed plaintiff out of the prostitution [unit] does not negate the retaliatory nature of the subsequent decision to permanently transfer plaintiff out of [the] prostitution [unit]."

■ This court finds that the alleged action of defendants Garcia and Aguinaga in causing plaintiff's "permanent" transfer into the uniformed patrol district in the twenty–first district falls within the limitations period. The United States Supreme Court has recognized that for purposes of measuring the limitations period, "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); see also *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). An employment event that is merely an effect of a prior employment decision usually will not constitute a separate and distinct discriminatory act. *See Chardon,* 454 U.S. at 8, 102 S.Ct. at 29; *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504. Instead, the statute of limitations period begins when the plaintiff is first notified of the original employment decision. *See Chardon,* 454 U.S. at 8, 102 S.Ct. at 29; *Ricks,* 449 U.S. at 258, 101 S.Ct. at 504. A subsequent decision is a mere consequence of a previous decision only if it is connected to and necessarily implied by the first decision. *See Lever v. Northwestern University,* 979 F.2d 552, 556 (7th Cir.1992).

The allegations set forth in the complaint reflect that the decision to permanently transfer plaintiff on December 16, 1993, to a uniformed patrol unit in the twenty–first district constitutes an independent act. The complaint avers that on or about September 13, 1993, plaintiff was transferred out of the Prostitution Unit and into a uniformed patrol unit in the twenty–first district "because of plaintiff's knowledge of defendant Aguinaga's association with a known prostitute." However, the complaint does not indicate whether—at that time—any decision had been made with respect to the duration of the transfer. The complaint indicates that subsequently, in or about November 1993,

"plaintiff protested his detail to the 21st district to defendant Garcia for the reason that it constituted retaliation against plaintiff for his knowledge of defendant Aguinaga's misconduct and association with a known prostitute." The complaint also avers that in or about November 1993, plaintiff initiated a CR concerning defendant Aguinaga's misconduct and association with a known prostitute. According to the complaint, the decision to permanently transfer plaintiff occurred following plaintiff's protest and was effectuated on or about December 16, 1993. The complaint avers that the decision to permanently transfer plaintiff was "in retaliation for plaintiff's protesting defendant Aguinaga's misconduct and association with a known prostitute." There is nothing in the complaint that suggests that there was any indication from plaintiff's transfer of September 13, 1993, verbal or otherwise, that plaintiff's transfer would be permanent. As a result, the alleged decision to permanently transfer plaintiff into a uniformed patrol unit in the twenty–first district is not a mere consequence of the alleged transfer of September 13, 1993, but rather a separate and distinct act which falls within the limitations period.

■ As previously mentioned, plaintiff relies upon the continuing violation theory to bring his First and Fourteenth Amendment claims based on alleged acts occurring prior to December 8, 1993, within the two–year limitations period. The continuing violation doctrine allows a plaintiff to obtain relief for a time–barred act by linking it with an act that is within the limitations period. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992). There are currently three viable continuing violation theories. *See id.* This court finds that none of the continuing violation theories operate to allow the plaintiff to obtain relief on his claims to the extent that they are based on alleged acts occurring prior to December 8, 1993.

■ The first continuing violation theory encompasses decisions, usually relating to hiring and promotions, where the employer's decisionmaking takes place over a period of time making it difficult to determine the actual date of the allegedly discriminatory act. *See id.* Courts have tolled the statute

in such cases for equitable reasons similar to those underlying the federal equitable tolling doctrine under which a person injured by an unlawful act need not sue until she knows, or through the exercise of reasonable diligence would have known, not only that she has been injured but also that she has been injured by a wrongful act of the defendant. *Moskowitz v. Trustees of Purdue University,* 5 F.3d 279, 281 (7th Cir.1993). Relative to this continuing violation theory, the Seventh Circuit has explained that:

> [T]he fact that a series of discriminatory or otherwise unlawful acts is indeed a series, a continuum, rather than a concatenation of unrelated acts, will delay the deadline for suing with respect to the earliest acts in the series only if their character was not apparent when they were committed but became so when viewed in light of the later acts.

*Id.*

The first continuing violation theory does not toll plaintiff's §§ 1983 and 1985(3) claims based on allegations in the complaint occurring prior to December 8, 1993. In particular, the allegations in the complaint suggest that plaintiff knew, or should have realized, that the alleged retaliation against plaintiff occurring prior to December 8, 1993, was injurious to him. The alleged retaliation which the complaint indicates was directed toward plaintiff during this period includes the alleged transfer of plaintiff from the Prostitution Unit into a uniformed patrol unit in the twenty–first district. However, the complaint also avers that in or about November 1993, plaintiff protested his transfer to the twenty–first district to defendant Garcia "for the reason that it constituted retaliation against plaintiff for his knowledge of defendant Aguinaga's misconduct and association with a known prostitute." Therefore, the complaint reflects that plaintiff knew, or should have known, that his alleged transfer out of the Prostitution Unit was injurious to him.

 This court also finds that the second continuing violation theory does not operate to save plaintiff's § 1983 and § 1985(3) claims based on the alleged acts of defendants occurring prior to December 8, 1993.

The second continuing violation theory involves an employer's express, openly espoused policy that is alleged to be discriminatory. *Jones v. Merchants National Bank & Trust Co. of Indianapolis,* 42 F.3d 1054, 1058 (7th Cir.1994). Although the complaint asserts that defendants have all either directly participated and/or acquiesced in the pattern or practice of punishment and retaliation at the CPD, nowhere in the complaint do plaintiffs aver that such practice was open and clearly conveyed. The complaint suggests that the alleged repeated failure to properly, effectively, and timely discipline, investigate and punish members of the CPD was in order to cover up any such practice. Indeed, the complaint asserts that forms of retaliation and punishment include, inter alia, "attempts to conceal the misconduct on the part of members of the [CPD]." Thus, the complaint's allegations of misconduct occurring prior to December 8, 1993, do not fit into the second continuing violation theory.

 Turning to the third continuing violation theory, this court finds that this prong of the continuing violation doctrine also does not operate to bring plaintiff's § 1983 and § 1985(3) claims based on the alleged acts of defendants occurring prior to December 8, 1993, within the limitations period. The third continuing violation theory stems from cases wherein a plaintiff claims that an employer has, for a period of time, covertly followed a practice of discrimination. *Id.* However, in such a case, a plaintiff can only realize that he or she is a victim of discrimination after a series of discrete, allegedly discriminatory acts, about which the plaintiff was unaware, or would not have become aware after exercising reasonable diligence, had harmed her. *Id.* As previously mentioned, the allegations in the complaint suggest that plaintiff was aware, or should have been aware of the single alleged incident of retaliation and/or punishment which was directed toward plaintiff prior to December 8, 1993. In response to the alleged transfer of plaintiff from the Prostitution Unit to a uniformed patrol unit in the twenty–first district, plaintiff protested to defendant Garcia. As a result, the allegations reveal that plaintiff was, or should have been,

aware of the alleged incident of punishment and/or retaliation directed toward him prior to December 8, 1993. Consequently, defendants' respective motions to bar the § 1983 and § 1985(3) claims of plaintiff based on the allegations of events occurring prior to December 8, 1993 are granted.

The continuing violation theory therefore does not apply in the instant case. As a result, plaintiff's § 1983 and § 1985(3) claims based on the alleged conduct by defendants occurring prior to December 8, 1993, are barred by the two year statute of limitations for § 1983 and § 1985(3). The only alleged act that survives the applicable statute of limitations is plaintiff's claim that on or about December 16, 1993, defendants Garcia and Aguinaga caused him to be permanently transferred out of the Prostitution Unit into a uniformed patrol unit in the twenty–first district in retaliation for the protesting by plaintiff of defendant Aguinaga's misconduct and association with a known prostitute.

## II. Plaintiff's Claims Based on § 1983 (Counts I—III)

■■■ This court now addresses the propriety of plaintiff's § 1983 claims against the defendants in counts I through III based on the alleged permanent transfer of plaintiff out of the Prostitution Unit and into a uniformed patrol unit in the twenty–first district—the only alleged act that survives the statute of limitations in the instant case. Plaintiff brings his § 1983 claims in counts I through III against the City as well as against the other individual defendants who have been sued in both their official and their individual capacities. A claim against a municipal official in their official capacity is not a suit against the official, but rather is a suit against the government entity for which they work. *See Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985); *Perkins v. Silverstein*, 939 F.2d 463, 469 (7th Cir.1991). To support such a claim, a plaintiff must assert facts which, if true, show that the respective defendants acted pursuant to a municipal policy or custom that deprived him or her of a constitutionally protected right. *See Graham*, 473 U.S. at 165–66, 105 S.Ct. at 3105;

*Perkins* 939 F.2d at 469. However, municipal officers may also be sued in their individual capacity. *See Graham*, 473 U.S. at 165, 105 S.Ct. at 3105. To establish that the municipal officers are personally liable under § 1983, a plaintiff does not have to show that a defendant acted pursuant to a custom or policy, but rather that a defendant deprived the plaintiff of a constitutional right while acting under color of state law. *See id.* This court will address the motion of defendants to dismiss plaintiff's § 1983 claims in counts I through III.

### A. Count I (First Amendment Claim)

■■■ Count I avers that defendants deprived and/or interfered with plaintiff's First Amendment rights. Count I asserts that the permanent transfer of plaintiff by defendants Garcia and Aguinaga on December 16, 1993, violated plaintiff's First Amendment right to freely speak out and protest defendant Aguinaga's misconduct and association with a known prostitute. Plaintiff asserts that the decision to permanently transfer him was unlawful retaliation motivated by his alleged protest of defendant Aguinaga's "misconduct and association with a known prostitute."

Defendants contend that count I fails to sufficiently allege a First Amendment claim. In particular, defendants argue that the complaint does not contain allegations reflecting that the alleged permanent transfer of plaintiff was in retaliation for speaking out on a matter of public concern. Plaintiff disputes this contention and asserts that "the complaint specifically alleges that plaintiff was permanently assigned to a patrol position after protesting defendant Aguinaga's attempt to remove him from [the] prostitution [unit]."

■■■ The Seventh Circuit has recognized that First Amendment claims under § 1983 must be based on actions which create the potential for chilling employee speech on matters of public concern. *See DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir.1995). Without considering whether the alleged actions in this case created the potential for chilling employee speech, this court finds that the allegations of the second amended complaint do not indicate that the

speech at issue was a matter of public concern. In connection with any First Amendment claim under § 1983, plaintiffs must establish that their complaints involved matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 146–148, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708 (1983). The Seventh Circuit has explained that, with respect to First Amendment claims brought by public employees against their government employer,

> To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to " 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' "

*Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir. 1994) (quoting *Connick*, 461 U.S. at 142, 103 S.Ct. at 1687). The Seventh Circuit has also explained that the determination of whether speech amounts to a matter of public concern is based on " 'the content, form, and context of a given statement as revealed by the whole record.' " *Id.* at 651 (quoting *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1690.)

Applying the *Connick* balancing test, this court agrees with defendants that the allegations concerning the complaint by plaintiff to Internal Affairs of defendant Aguinaga's misconduct and association with a known prostitute, as well as the allegation concerning plaintiff's protest of his transfer to defendant Garcia, are not couched in language suggesting the motivation of bringing to the IAD matters of public concern deserving of First Amendment protection. With respect to plaintiff's comments to defendant Garcia, the complaint alleges that in or about November 1993, plaintiff protested his detail to the twenty-first district to defendant Garcia and indicated that, in his view, the protest was in retaliation "for [plaintiff's] knowledge of defendant Aguinaga's misconduct and association with a known prostitute." It is unclear whether the content of plaintiff's alleged comments to defendant Garcia involved a matter of public interest. The complaint does not elaborate further relative to plaintiff's comments as to the nature of de-

fendant Aguinaga's alleged "misconduct" or his alleged "association with a known prostitute." Without further explanation as to plaintiff's comments on the nature of defendant Aguinaga's alleged misconduct and association with a known prostitute, this court cannot assess whether plaintiff's comments to defendant Garcia involved a matter of public interest. However, the Seventh Circuit has indicated that the *Connick* test requires an inquiry into the " 'point of the speech in question' " and, in doing so, to assess whether it was " 'the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?' " *Id.* (quoting *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985)); see also *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir.1989). The Seventh Circuit has also indicated that "[t]he content and form of the employee's remarks, along with the underlying circumstances, including the employee's reasons for speaking, remain essential to this determination." *Fruin*, 28 F.3d at 651. The alleged protest to defendant Garcia concerning plaintiff's transfer was on plaintiff's own behalf, in his own interest, and in a private setting. According to the complaint, the alleged complaint to defendant Garcia concerning plaintiff's transfer was in the form of a one-to-one private conversation, and voiced solely in personal terms and for personal reasons, confirming that his motivation in voicing the complaint was purely personal. *See id.* As a result, the complaint fails to allege that plaintiff's protest to defendant Garcia about his transfer involved a matter of public concern.

■ This court also finds that the allegation concerning the complaint initiated by plaintiff to Internal Affairs of defendant Aguinaga's misconduct and association with a known prostitute does not involve a matter of public concern. It is unclear from the allegations in the complaint whether the content of plaintiff's complaint to the Internal Affairs Division regarding defendant Aguinaga involves a matter of public interest. The complaint avers that in or about November 1993, plaintiff protested his detail to the twenty-first district and complained about "defen-

dant Aguinaga's misconduct and association with a known prostitute." However, the complaint does not elaborate further on plaintiff's comments regarding the nature of defendant Aguinaga's alleged "misconduct" or on the nature of defendant Aguinaga's alleged "association with a known prostitute." Without further explanation as to plaintiff's comments to the Internal Affairs Division, this court cannot assess whether plaintiff's comments involved a matter of public interest. Although plaintiff's complaint to the Internal Affairs Division may have taken on more of a public quality as the complaint was made outside of the chain of command, the allegations in the complaint reflect that the complaint to Internal Affairs was voiced in personal terms and for personal reasons, confirming that the motivation for voicing the complaint was purely personal. *See id.* As such, the complaint fails to contain allegations supporting plaintiff's First Amendment claim in count I. Hence, the respective motions of defendants to dismiss count I is granted.

### B. Count II (Fourteenth Amendment Claim)

#### 1. Equal Protection

This court now addresses whether count II of the complaint sufficiently avers a Fourteenth Amendment claim against defendants for the alleged permanent transfer of plaintiff out of the Prostitution Unit and into a patrol unit in the twenty–first district. This court initially observes that count II fails to aver a cause of action under the Equal Protection Clause of the Fourteenth Amendment based on his alleged permanent transfer. A person bringing an action under the Equal Protection Clause must show intentional discrimination against him by a state governmental entity because of his membership in a protected class, not merely because he was treated unfairly as an individual. *See Huebschen v. Dept. of Health and Social Services* 716 F.2d 1167, 1171 (7th Cir.1983). In the present case, the complaint does not aver that defendants took any action against him because of his membership in a protected class, but rather that he was retaliated against because of protesting his Sep-

tember 13, 1993, transfer. As a result, the complaint fails to state an equal protection claim that plaintiff was discriminated against because of his membership in a protected class.

#### 2. Due Process

The parties, however, dispute whether count II sufficiently avers a cause of action under the Due Process Clause of the Fourteenth Amendment. Defendants contend that count II fails to set forth a due process claim on behalf of plaintiff. Plaintiff, however, argues that count II sufficiently alleges that he was deprived of a property interest without due process of law. Plaintiff also asserts that count II sufficiently alleges that he was deprived of a liberty interest without due process of law.

#### a. Property Interest

With respect to whether count II sufficiently avers a due process claim on behalf of plaintiff, this court initially addresses whether count II sufficiently sets forth a claim that plaintiff was deprived of a property interest without due process of law. In order to make out such a due process claim, a plaintiff must show that he had a constitutionally protected property interest and that he was deprived of that interest without due process of law. *See Kim Construction Co. v. Board of Trustees of Village of Mundelein,* 14 F.3d 1243, 1245 (7th Cir.1994). The Seventh Circuit has recognized that "'no Illinois law ... protects a Chicago patrol officer from adverse action short of discharge or suspension.'" *Swick v. City of Chicago,* 11 F.3d 85, 86 (7th Cir.1993) (quoting *Confederation of Police v. City of Chicago,* 547 F.2d 375, 376 (7th Cir.1977)). The Seventh Circuit has also observed that a property interest does not extend "to the purely dignitary or otherwise nonpecuniary dimensions of employment." *Id.* at 87. In the present case, plaintiff does not aver that he was discharged or suspended, but rather that he was permanently transferred out of the Prostitution Unit into a patrol unit in the twenty–first district. In addition, the complaint is utterly devoid of allegations which reflect that plaintiff suffered any pecuniary loss resulting

from his alleged permanent transfer. As such, plaintiff fails to state a claim that he was deprived of a property interest without due process of law because of his alleged permanent transfer.

■■■ This court finds no merit to plaintiff's claim, based on the CBA, that he had a property interest in not being permanently transferred without due process. It is true that a property interest may arise out of a contract. *See Hadley v. County of DuPage*, 715 F.2d 1238, 1241–42 (7th Cir.1983). However, the Seventh Circuit has indicated that "[t]o create a justifiable and reasonable expectation of job security, and thereby establish a property interest, there must be a mutually explicit understanding between the parties." *See id.* at 1242. In the present case, the complaint is devoid of allegations reflecting that there is a mutual agreement between the parties in the CBA to prohibit involuntary transfers, permanent or otherwise, or that there is a mutual agreement between the parties providing for a hearing, or other procedural safeguards, prior to or in connection with a transfer. As a result, any claim that count II sufficiently alleges a deprivation of a property interest based on the CBA is without merit.

#### b. *Liberty Interest*

■■■ Next, this court addresses whether, based on the alleged permanent transfer of plaintiff, count II sufficiently avers a claim that plaintiff was deprived of a liberty interest without due process of law. As stated, the complaint avers that plaintiff was permanently transferred out of the Prostitution Unit and into a uniformed patrol unit in the twenty–first district in retaliation for plaintiff's protesting of defendant Aguinaga's alleged misconduct and association with a known prostitute. The complaint also avers that the alleged permanent transfer was for the purpose of and had the effect of impugning plaintiff's integrity and credibility and was designed to shield, insulate, and conceal the official misconduct of defendant Aguinaga.

■■■ This court finds that the allegations relied on in count II fail to reflect that plaintiff was deprived of a liberty interest

without due process of law. It is true that plaintiff has a liberty interest in pursuing his occupation. *See Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1409 (7th Cir. 1994). Defendants were therefore required to afford plaintiff due process if, in the process of transferring him, they publicly charged him with immorality, dishonesty, or the equivalent thereof, or otherwise stigmatized him in a way that foreclosed other employment opportunities. *See id.* In this case, the complaint does not contain allegations indicating that defendants publicly charged plaintiff with immorality, dishonesty, or the equivalent thereof, or that the alleged permanent transfer out of the Prostitution Unit into a patrol unit in the twenty–first district humiliated and/or stigmatized him so as to affect his future employment opportunities. As a result, count II fails to assert a cause of action that plaintiff was deprived of a liberty interest without due process of law. *See, e.g., Watson v. U.S. Department of Housing and Urban Development*, 576 F.Supp. 580, 584–85 (N.D.Ill.1983) (transferred government employee failed to allege a due process claim for deprivation of liberty interest where "the government ha[d] not made any charge against [the plaintiff] that might seriously damage his standing in the community, such as a charge of dishonesty or immorality.").

■■■ This court also finds no merit to plaintiff's claim that count II sufficiently avers a deprivation of plaintiff's liberty interests based on his alleged permanent transfer because, in plaintiff's view, the complaint avers that plaintiff was retaliated against for exercising his First Amendment rights. It is true that a substantive due process claim against a state official for the alleged violation of a plaintiff employee's right to free speech by retaliating against the plaintiff for his speech "would be possible because the First Amendment has been incorporated into the Fourteenth Amendment as a liberty interest." *Lawshe v. Simpson*, 16 F.3d 1475, 1479 (7th Cir.1994). In that connection, the Seventh Circuit has recognized that state retaliatory conduct constitutes a substantive due process violation if the retaliation was for exercising constitutional rights. *See Black v.*

*Lane,* 22 F.3d 1395, 1402 (7th Cir.1994). However, as previously discussed, the complaint fails to contain allegations reflecting that defendants violated plaintiff's First Amendment free speech rights. As such, plaintiff fails to state a substantive due process claim based on the alleged violation of his free speech rights. Hence, the court dismisses count II of plaintiff's complaint because it fails to state a due process claim on behalf of plaintiff.

### C. § 1983 Claim for Unconstitutional Customs and Practices (Count III)

This court also finds that count III fails to state a § 1983 claim against defendants. Count III seeks relief against defendants under § 1983 for the alleged maintenance of unconstitutional customs and practices. Count III avers that defendants: conspired together to violate plaintiff's constitutional and civil rights; demonstrated a continued and deliberate indifference to plaintiff's constitutional and civil rights; and have "wholly failed to take steps to initiate measures necessary to redress the[se constitutional violations]." Count III does not raise a constitutional right alleged to have been violated other than those complained of in counts I and II respectively, *i.e.,* plaintiff's respective claims under the First and Fourteenth Amendments. In addition, aside from incorporating the previously discussed factual allegations relating to plaintiff's alleged transfer, count III does not put forth any additional factual allegations.

This court dismisses count III because, like counts I and II, it fails to contain allegations which, if true, reflect that plaintiff has suffered a constitutional injury. As stated, in order to support a § 1983 claim against the City and the defendants in their official capacity, a plaintiff must allege facts which, if true, show that plaintiff suffered a constitutional deprivation resulting from a municipal policy or custom. *See Graham,* 473 U.S. at 165–66, 105 S.Ct. at 3105; *Perkins,* 939 F.2d at 469. Conversely, to support a § 1983 claim against municipal officers in their individual capacity, a plaintiff must allege facts showing that a defendant officer deprived plaintiff of a constitutional right

while acting under color of state law. *See Graham,* 473 U.S. at 165, 105 S.Ct. at 3105. In this case, as previously discussed, plaintiff fails to state a claim that he suffered a First or Fourteenth Amendment deprivation. Count III does not claim that any of plaintiff's other constitutional rights were violated and does not put forth any additional factual allegations reflecting that plaintiff suffered a First or Fourteenth Amendment deprivation. Therefore, since count III fails to contain allegations which, if true, reflect that plaintiff suffered a constitutional deprivation, this court dismisses plaintiff's § 1983 claim in count III.

### III. Plaintiff's Claim Under § 1985(3) (Count III)

Count III also seeks relief under § 1985(3). However, this court finds that, like plaintiff's § 1983 claim in count III, plaintiff's § 1985(3) claim fails to contain allegations reflecting that plaintiff suffered a constitutional deprivation and therefore fails to state a claim upon which relief may be granted. In order to state a claim under § 1985(3), a plaintiff must allege: (i) the existence of a conspiracy; (ii) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (iii) an act in furtherance of the conspiracy; (iv) which results in an injury to person or property or a deprivation of a right or privilege granted to a citizen of the United States. *See United Brotherhood of Carpenters and Joiners, Local 610, et al. v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *Hartman v. Bd. of Tr. of Com. College Dist. 508,* 4 F.3d 465, 469 (7th Cir.1993). In this case, without considering whether the allegations relied on in count III satisfy the other elements, it is clear that count III fails to contain allegations supporting the second and fourth elements of a § 1985(3) claim. In connection with the second element of a § 1985(3) claim, a plaintiff must aver " 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.' " *Scott,* 463 U.S. at 829, 103 S.Ct. at 3356 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971)). Nowhere in the allega-

tions relied on in count III does plaintiff aver that the alleged permanent transfer was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." As a result, count III fails to contain allegations supporting the second element of a § 1985(3) claim. In addition, as previously discussed, the complaint fails to contain allegations reflecting that plaintiff suffered a constitutional injury because of the alleged permanent transfer. Consequently, count III fails to contain allegations supporting the fourth element of a § 1985(3) claim. Hence, this court dismisses plaintiff's § 1985(3) claim against defendant in count III.

### CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff's § 1983 and § 1985 claims based on the allegations which are outside the statute of limitations for such claims are dismissed with prejudice. However, plaintiff's claims based on the allegations which are within the limitations period are dismissed without prejudice. Plaintiff is given leave to—consistent with his Rule 11 obligations—file an amended complaint based on the allegations within the limitations period within thirty days after the entry of this disposition.